UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL ACTION |
| VERSUS | |
| | NO. 22-84-JWD-SDJ |
| MALIK J. LANDRY | |

**RULING AND ORDER**

This matter comes before the Court on the *Motion to Suppress* (Doc. 50) filed by Defendant Malik Landry ("Defendant" or "Landry"). The Government opposes the motion. (Doc. 56-1.) The Court held an evidentiary hearing on the motion on July 30, 2025. (Doc. 59) The parties filed simultaneous post-hearing briefs. (Docs. 66, 67.) Defendant filed a reply, (Doc 72), and the Court allowed the Government an opportunity to file a surreply, (Docs. 73, 74). Further argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted in part and denied in part.

I. **RELEVANT FACTUAL BACKGROUND**

Defendant is charged with one count of possession of a firearm by a person under a domestic violence protective order. (Doc. 1.) The relevant facts are summarized as follows.

On May 14, 2022, police were working a detail at Miracle Place Church in Baker, Louisiana, at the funeral of someone killed in local gang violence. (Tr. 6–7.) A "source of information" ("SOI") gave a tip about someone having a concealed firearm at the church. (Tr. 9.) Sgt. Holiday observed Defendant reposition a firearm under his clothes. (Tr. 11–12.)

Sgt. Holiday communicated with Officer Burns, and Burns approached Defendant. (Tr. 44–45.) Burns observed the imprint of a firearm concealed under Defendant's clothing, and

Burns asked Defendant politely if he had a firearm. (Tr. 44–45.) Defendant admitted that he did. (Tr. 45.)

Holiday then removed the firearm from Defendant's waistband and took Defendant into custody by placing him in handcuffs and taking him from the church to the Baker Police Department a few blocks away. (Tr. 46–47.) Burns said he did not want to cause more of a disturbance, as emotions were running high. (*Id.*) Holliday said that Defendant was removed "out of an abundance of safety for the officers," though the crowd "wasn't hostile" and "[i]t wasn't a bad environment." (Tr. 13–14.)

Defendant made admissions in the car and then at the police station. (Tr. 47–52.) Defendant now moves to "suppress the evidence obtained by law enforcement officers on the day of Mr. Landry's arrest." (Doc. 72 at 1.)

## II. RELEVANT STANDARD

"The Fourth Amendment guarantees that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *United States v. Hunt*, 253 F.3d 227, 230 (5th Cir. 2001) (quoting U.S. Const. amend. IV). "The essential purpose of the Fourth Amendment is to impose a standard of 'reasonableness' upon law enforcement agents and other government officials in order to prevent arbitrary invasions of the privacy and security of citizens." *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 653–654 (1979)).

"Warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few specific exceptions." *United States v. Guerra*, 605 F. App'x 295, 297 (5th Cir. 2015) (per curiam) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "Because the court is asked to consider a warrantless search and seizure, the Government has the burden of proving, by a

preponderance of the evidence, that the search and seizure were constitutional." *Id.* (citing *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012)).

### III. DISCUSSION

Preliminarily, the Court notes that Defendant's initial admission to Officer Burns that he had a firearm, before his arrest, is not subject to suppression. The "mere communication between a citizen and an officer, involving no element of detention or coercion[,] . . . does not implicate the fourth amendment." *United States v. Hanson*, 801 F.2d 757, 761 (5th Cir. 1986) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (plurality opinion).

Here, Burns was "very polite" when he approached Defendant. (Tr. 44.) He did not yell or scream, and his weapon was not drawn. (Tr. 44–45.) There's no indication that the encounter was anything other than consensual. Thus, there is no Fourth Amendment violation with respect to this admission. *See Hanson*, 801 F.2d at 761 (5th Cir. 1986) ("Before Pinkston asked Hanson to step aside, the officers' conduct did not implicate the fourth amendment. They merely approached the defendants, displayed their badges, and asked questions." (citation omitted)).

But the larger question is whether the motion should be granted as to the firearm and other statements made by Defendant that day. The Court finds that this issue is governed by *United States v. Wilson*, 143 F.4th 647 (5th Cir. 2025), which this Court is bound to follow.

The key question in *Wilson* was "whether police can *Terry* stop a citizen based *solely* on the fact that he is carrying a concealed firearm." 143 F.4th at 651. *Wilson* held that the "The answer is emphatically 'no.'" *Id.*

But that is exactly what happened in this case. Sgt. Holiday testified that, "other than possessing a concealed firearm, that [SOI] didn't give [Holiday] any information to believe that Mr. Landry was committing any other crime[.]" (Tr. 9, 30.) Holiday stated that the reason for detaining and arresting Defendant was the concealed firearm. (Tr. 35.) Likewise, Officer Burns took Defendant into custody by placing him in handcuffs, putting him in the back of his vehicle, and taking him to the station after he admitted to having a firearm. (Tr. 45–46, 69–70.) Burns would not have given Defendant his firearm back if he asked. (Tr. 69.) Burns' testimony concluded:

> Q. Just to sum it up. . . . The reason you arrested [Landry] is you believed he was violating [La. R.S.] 14:94, right? Carrying a concealed weapon; is that correct?
>
> A. Yes.
>
> Q. You didn't have any suspicion about him doing any other crime; is that correct?
>
> A. Correct.

(Tr. 74–75.) Thus, the seizure in this case violated *Wilson*'s key principle.

*Wilson* ultimately affirmed the denial of the motion to suppress because "the officers had reasonable suspicion to stop [the defendant] based on the facts in the record[,]" 143 F.4th at 659, but that is not the case here. The SOI did not say that Defendant was threatening people or going to "shoot up the place[;]" he said only that he had a partially concealed firearm. (Tr. 61–62.) Burns said he did not observe Defendant threaten anyone, "pull out the gun[,]" or "yell or scream or do anything like that[.]" (Tr. 64.) Burns heard no gunshots. (Tr. 65.) From the point of Defendant

4

saying he had a firearm, Defendant made no threatening gestures to Burns; Defendant did nothing to make Burns feel like he was going to harm him; and Defendant did nothing to make Burns fearful that his life was in danger—other than carrying the firearm without a permit. (Tr. 69, 76.) Moreover, while there was some concern of gang violence at the funeral, there was no indication that Defendant himself was a member of any gang, and, in fact, officers had no idea if he was. (Tr. 27, 37.) Further, again, the crowd "wasn't hostile[,]" and "[i]t wasn't a bad environment." (Tr. 14.)

Thus, the officers here did exactly what *Wilson* prohibits—search and seize the Defendant solely because he was carrying a firearm. Under *Wilson*, the motion must be granted. *See United States v. Pickett*, No. CR 23-52, 2025 WL 3140817, at *7 (E.D. La. Nov. 10, 2025) ("Thus, even considering 'the whole picture' of the officers' 'own experience and specialized training' and the 'suspect's location and proximity to known or reported criminal activity,' *Wilson*, 143 F.4th at 659 (citations and internal quotations omitted), the officers were not justified in conducting a *Terry* stop on Pickett. Carrying a concealed weapon in a high-crime area, without any independently suspicious behavior from the suspect or an informative tip, is insufficient to create reasonable suspicion for a *Terry* stop.").

The Government even seems to concede the consequences of *Wilson*, which the Government correctly calls a "bombshell." (Doc. 66 at 5–6.) The Government states:

> [The officers'] subjective intent is not important if the facts establish, objectively, that Landry could be stopped for carrying a firearm into a church that afternoon by the conduct of officers at the church. Landry's Fourth Amendment rights would not have been violated before July 17, 2025. However, following the rationale and ruling in *United States v. Wilson, supra*, decided on July 17, 2025, a seizure, based solely on that violation, would be violation of Landry's Fourth Amendment rights, because that per se presumption was no longer available.

5

(*Id.* at 7–8.)

Notwithstanding, the Government insists that the good faith exception applies. (*Id.* at 9.) The Government asserts:

> When law-enforcement officers "exhibit 'deliberate,' 'reckless,' or 'grossly' negligent disregard of Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an 'objectively good-faith belief' that their conduct is lawful, or when their conduct involves only simple, 'isolated' negligence, the 'deterrence rationale loses much of its force,' and exclusion cannot 'pay its way.' [*Davis v. United States*, 564 U.S. 229, 236–37 (2011)]. The "deterrence benefits of exclusion vary with the culpability of the law-enforcement conduct" at issue. [*Id.*]
>
> Although there was no Fifth Circuit case addressing facts similar or identical to those before this Court, the case law as it existed, in this state and federal circuit courts across the country, would have led an objectively reasonable officer to believe that he could affect a seizure pursuant to La. R.S. 14:95.1. [*See* also *United States v. Holley*, 831 F.3d. 322, 326–27 (5th Cir. 2016), [where] the Court found cases in other federal jurisdictions and in Texas state courts, which though not binding, "were close enough to the line of validity where a reasonable officer relying upon them, would be acting in good faith, even though the Supreme Court found later that such activity by police officers was unconstitutional.]

(*Id.* at 9 & n.48.) The Government also emphasizes that Burns was forced to react quickly because a crowd began to gather around him, "there was a potential for a confrontation," and there were the prior incidents of violence. (*Id.* at 10.) The Government concludes, "The police in this instance behaved by the book. . . . Under the good faith doctrine, this search should be upheld." (*Id.*)

Defendant advances a number of arguments for why the good faith exception does not apply. (Doc. 72 at 5–13.) However, these arguments boil down to the following: (1) the good faith exception only applies if binding precedent supports the officer's conduct, and, here, there was none, (*id.* at 6–7); (2) though the Government does cite a Fifth Circuit case applying the good faith doctrine when only persuasive authority exists, that case arose in the context of a different

6

application of the good faith doctrine involving a warrant, which is not present here, (*id.* at 9–13); and (3) *Wilson* demonstrates that the "*per se* presumption" relied upon by the Government "has been unconstitutional since the founding of our country, runs counter to the *Terry* doctrine, and violates the Supreme Court blessing of very limited kinds of suspicionless searches under the Fourth Amendment doctrine generally." (*Id.* at 7 (quoting *Wilson*, 143 F.4th at 656–57 (cleaned up)).)

The Court remains unconvinced by Defendant's first two arguments. As the Government points out, in *United States v. Holley*, 831 F.3d 322, 326–27 (5th Cir. 2016), the Fifth Circuit applied the good faith exception, despite the absence of binding precedent, when there was "uniform case law" on point, with "thirteen different federal and state judges (including three members of this [circuit])" supporting the conclusion that there was no categorical rule prohibiting the officer's conduct. The Court is unconvinced that *Holley* should apply to only one strand of the good faith doctrine when Courts have taken a more flexible approach. *See United States v. Beverly*, 943 F.3d 225, 232–33 (5th Cir. 2019) ("The good-faith exception to the exclusionary rule, first articulated over forty years ago in [*United States v. Leon*, 468 U.S. 897 (1984),] has been applied to a range of cases," and discussing several "strands" of the doctrine (citations omitted)); *United States v. Hardrick*, No. 10-202, 2012 WL 4883666, at *5 (E.D. La. Oct. 15, 2012) ("The Supreme Court has flexibly applied the good-faith exception embraced in *Leon* to situations beyond law enforcement's reliance on a defective warrant issued by a neutral magistrate." (citations omitted)).

However, the Court finds Defendant's third argument—whether *Wilson* itself bars an application of the good faith exception—to be the central issue of this motion. This is an extremely close question, and the Court has struggled with it. Ultimately, however, this Court holds it is bound by the reasoning of *Wilson* to find that the good faith exception does not apply in this case.

7

Again, *Wilson* concluded that "an officer cannot search or seize a person simply because he is keeping or bearing a firearm—any more than an officer can search or seize a person simply because he is keeping or bearing a piece of paper[,]" 143 F.3d at 655, and *Wilson* based this rule on six reasons, some of which are relevant to the instant analysis. The first was that "the district court's *per se* presumption of illegality is inconsistent with our Constitution's history and tradition." *Id.* at 656. The Fifth Circuit explained:

> When America declared its independence from England, it also declared its independence from writs of assistance and general warrants. That means officers are no longer allowed to presume that people walking down the street are violating the law. And they certainly cannot presume that gun owners *as a class* are violating the law. To hold otherwise is to derogate both our Fourth Amendment and our Second.

*Id.*

The second reason was that the "*per se* presumption of illegality is inconsistent with the *Terry* doctrine. . . . [T]he entirety of the *Terry* doctrine depends on reasonable, *individualized* suspicion. . . . None [of the Supreme Court's precedents] allows officers to make class-wide, blanket determinations that all people of some disfavored type are criminals." *Id.* at 656–57.

Third, the "*per se* presumption of illegality is inconsistent with Fourth Amendment doctrine more generally." *Id.* at 657. While "[t]he Supreme Court has blessed very limited kinds of suspicionless searches or seizures" in cases like roadblocks and "random drug testing at schools, . . . there is a world of difference between a programmatic, suspicionless search for everyone and a targeted, suspicionless search for gun owners." *Id.* (citations omitted).

Next (important for this Court's purposes):

> The . . . *per se* presumption of illegality would have untenable consequences in other areas. For example, driving a car without a license is unlawful in every State. . . . Based solely on the observation that someone is driving a car, does an officer have

8

> reasonable suspicion that the driver is unlicensed? Obviously, no. . . . Officers cannot assume that citizens engaging in an activity subject to licensing are unlicensed. Without more facts, it is insufficiently *probable* that the observed conduct suggests unlawful activity. . . . If anything, the Constitution's prohibition on presuming illegality should be stronger for gun owners than for car drivers. Unlike driving on public highways, which is a State-created and State-regulated privilege, the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Id.* at 658 (cleaned up).

Thus, while the Court is sympathetic to the Government's argument that a persuasive body of law would have found the officer's conduct lawful before *Wilson*, *see id.* at 656 & n.5 (collecting decisions from five other circuits supporting the view that "carrying a firearm [was] presumptively unlawful" and that "the presumption justified *Terry* stopping anyone carrying a firearm anywhere in the State of Louisiana"), *Wilson* itself makes clear that, in this circuit, the search and seizure in this case was at odds with the "Constitution's history and tradition[,] . . . the *Terry* doctrine, [and] . . . Fourth Amendment doctrine more generally[,]" *id.* at 656–57. Given the breadth of *Wilson*'s reasoning, the Court cannot conclude that the officers in this case could have objectively believed their conduct was lawful when the Fifth Circuit has essentially said that it has never been lawful and was in fact "[o]bviously" not. *Id.* at 658.

As a result, the Court finds that the good faith exception does not apply. The search and seizure in this case were unlawful, and the fruits thereof must be suppressed.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Suppress* (Doc. 50) filed by Defendant Malik Landry is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** in that the Court finds that Landry's initial admission that he possessed a firearm was not subject to Fourth Amendment

9

protection. In all other respects, the motion is **GRANTED**, and all other evidence and statements from Landry's encounter with police on May 14, 2022, are hereby **SUPPRESSED**.

Signed in Baton Rouge, Louisiana, on December 12, 2025.

	**JUDGE JOHN W. deGRAVELLES**
	**UNITED STATES DISTRICT COURT**
	**MIDDLE DISTRICT OF LOUISIANA**